UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

Civil Action No.5:11-CV-00250-GWU            **ELECTRONICALLY FILED**

GEOFFREY CULBERTSON,                                                    PLAINTIFF,

   v.   **COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT**

MICHAEL J. ASTRUE, Commissioner
     of Social Security,
DEFENDANT.

     The Commissioner moves for summary judgment because the record contains substantial evidence in support of the Commissioner's decision denying benefits to the Plaintiff

MEMORANDUM IN SUPPORT OF THE COMMISSIONER'S DECISION

Statement of the Issue

THE COMMISSIONER'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND DECIDED BY THE PROPER LEGAL STANDARDS.

Statement of the Case

(i)    Administrative Proceedings

     On November 29, 2005, Plaintiff applied for disability insurance benefits and Supplemental Security Income (SSI), alleging disability beginning November 28, 2005 (Tr. 27, 28, 116-20). The agency denied Plaintiff's applications in initial and reconsideration determinations (Tr. 27-28). After a hearing in November 2007, the administrative law judge (ALJ) ordered three post-hearing consultative examinations and held another hearing on June 24, 2008 (Tr. 1203-17). The ALJ found Plaintiff not disabled in a decision dated July 25, 2008 (Tr. 49-57).

Upon request for review, the Appeals Council remanded to the ALJ for a written ruling on Plaintiff's request to obtain additional discovery from the post-hearing consultative examiners (Tr. 39-40). The ALJ held a third hearing post-remand on April 8, 2010 and issued a post-remand decision dated June 29, 2010 (Tr. 24-26, 1194-1202). The Appeals Council denied further review (Tr. 9-13). This decision is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff alleged in his Complaint that he was awarded SSI benefits on a subsequent application. Complaint, Par. 10. The Commissioner has determined Plaintiff filed a subsequent application in March 2011 and was awarded benefits effective June 2010, on the basis that he met Listing 8.04 (chronic infections of the skin or mucous membranes) due to an unhealed abdominal abscess that persisted for over 3 months.

(ii)     Statement of Facts

Plaintiff was 39 years old at the time of his alleged onset date and 44 years old at the time of June 2010 the decision (Tr. 26, 116). Plaintiff was hospitalized in November 2005 and not discharged until early January 2006 due to complications from multiple surgeries for a strangulated bowel obstruction (Tr. 240-56). Plaintiff alleged he was disabled due to surgery, septic shock, morbid obesity, respiratory failure, longstanding renal stent and mild metabolic acidosis (Tr. 125).[1]

---

[1] Metabolic acidosis results from too much acid in the body fluids, and can be caused by diabetes, severe dehydration, or many other factors. MedlinePlus.com (visited April 17, 2012) <http://www.nlm.nih.gov/medlineplus/ency/article/000335.htm>.

The ALJ found Plaintiff had not engaged in substantial gainful activity since November 28, 2005, the alleged onset date (Tr. 51).  The ALJ found Plaintiff had the following severe impairments: morbid obesity, lumbar spine degenerative disc disease (DDD), Pickwickian syndrome with mild chronic obstructive pulmonary disease (COPD), and large abdominal wall hernia (Tr. 51).[2]  The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 (2012) (Tr. 53).  The ALJ determined Plaintiff retained the residual functional capacity (RFC) to perform light exertional work, including lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking a total of 6 hours in an 8-hour day, and sitting 6 hours in an 8-hour day (Tr. 53).  The ALJ further found Plaintiff could never climb ladders, ropes or scaffolds and never crawl, and was limited to occasional climbing of stairs or ramps, and occasional stooping, crouching or kneeling (Tr. 53).  The ALJ further determined Plaintiff should avoid concentrated exposure to full body vibration, fumes, odors, dust or gases; and because of his body habitus, should avoid hazards such as unprotected heights and dangerous machinery (Tr. 53).

The ALJ found that Plaintiff could perform his past relevant work as a store manager (Tr. 55, 1212).  The ALJ further found based on the testimony of a vocational expert (VE), that work existed in the national economy Plaintiff could perform (Tr. 56).  The VE testified Plaintiff could perform jobs such as entry level assembly work, light order caller work, light cashier work,

---

[2] Pickwickian syndrome is a complex of symptoms that affects patients with extreme obesity. Symptoms include excessive daytime sleepiness, shortness of breath, disturbed sleep at night, and flushed face.  Medical Dictionary.com (visited April 13, 2012).
<http://medical-dictionary.thefreedictionary.com/Pickwickian+Syndrome>.

3

sedentary surveillance monitor work and sedentary dispatcher work (Tr. 56, 1213-14). Therefore, the ALJ determined Plaintiff was not under a disability through the dates of the decisions, July 25, 2008, and June 29, 2010 (Tr. 26, 57).

(iii) Standard of Review

The standard or scope of review applicable to this case is limited to determining whether the Commissioner's findings are supported by substantial evidence, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Wyatt v. Sec'y of Health and Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Sec'y of Health and Human Servs., 896 F.2d 1024, 1028 (6th Cir. 1990), quoting Kirk v. Sec'y of Health and Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).

In reviewing a case for substantial evidence, the Court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Even if there is evidence on the other side, the Commissioner's findings must be affirmed if supported by substantial evidence. Tyra v. Sec'y of Health and Human Servs., 896 F.2d at 1028. Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. Smith v. Chater, 99 F.3d 780, 781 (6th Cir. 1996).

ARGUMENT

### I. THE ALJ PROPERLY WEIGHED THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN.

Plaintiff contends that the ALJ did not give the appropriate weight to the opinion of his treating physician, Robert Biddle, M.D. and improperly dismissed it without sufficient findings.[3] Memorandum in Support of Plaintiff's Motion for Summary Judgment (Pl.'s Br.), p. 5. Dr. Biddle submitted a statement in December 2007 that described Plaintiff's surgical history, listed his diagnoses as morbid obesity, hypertension, dyslipidemia (high blood cholesterol), asthma, impaired fasting glucose, and metabolic syndrome (Tr. 1148-49). Dr. Biddle then stated in pertinent part, "His major disability at this time is secondary to his morbid obesity. His sitting, standing, ambulating plus his inability to bend or stoop are all adversely affected by his morbid obesity . . . I do not believe [Plaintiff] is employable so long as his morbid obesity persists" (Tr. 1149).

The ALJ is required to weigh each medical opinion in the record, and unless giving the opinion of Plaintiff's treating physician controlling weight, is required to give good reasons for the weight given. Wilson v. Comm'r. of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c)(2), 416.927 (c)(2).[4] Factors the ALJ must consider when weighing medical

---

[3]The extensive record in this case contains only three pages of treatment notes from Dr. Biddle (Tr. 658-60). He saw Plaintiff in February and April 2006, and November 2007 (Tr. 163, 658-60). In addition some of the hospital records from Bourbon Community Hospital indicate Dr. Biddle treated Plaintiff in the emergency room on three occasions between March and November 2005 (Tr. 229-237).

[4]The sub-paragraph numbering of several frequently cited Social Security Regulations changed effective March 26, 2012. See 77 FR 10651-01, 2011 WL 7404303.

5

evidence include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. 20 C.F.R. §§404.1527(c)(1)-(6),416.927(c)(1)-(6). Here, the ALJ granted "the medical records of treating physician Robert Biddle, M.D. some weight, because of the longitudinal history, but the undersigned notes Dr. Biddle's opinion the claimant is not employable is a finding of fact reserved to the Commissioner . . ." (citation omitted). (Tr.55)

Plaintiff relies on this Court's Order dated February 16, 2011 in the case of Henry v. Astrue, Civil Action No. 09-373-GWU, 2011 WL 276928 ( E.D. KY 2011) for its analysis of the treating physician rule. In the Henry case, the treating physician (Dr. Tallio) ordered a functional capacity evaluation (FCE) and agreed with the FCE findings that claimant could not even perform sedentary level work. Dr. Tallio stated the claimant was unable to maintain gainful employment. The ALJ rejected Dr. Tallio's opinion, noting that her statement that claimant was "unable to work" was an administrative finding not entitled to deference. The ALJ also found that the opinion was not well supported by medically acceptable clinical and laboratory diagnostic findings and was possibly issued out of sympathy for the patient.

This Court found that the ALJ's reasoning (opinion rendered out of sympathy) was the very language the court had found to be a summary rejection in Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 408 (6th Cir. 2009). This Court further stated, "There is no indication of why the ALJ might have thought that a facially valid FCE should be given no weight." This Court remanded the Henry case for further consideration at the administrative level because it found the error not to be harmless.

6

The Henry case is distinguishable from the case at bar for several reasons. Here, Dr. Biddle did not prepare or adopt an FCE. Rather, Dr. Biddle merely indicated Plaintiff's sitting, standing, ambulating and inability to bend or stoop were affected (Tr. 1149). Moreover, the ALJ gave Dr. Biddle's opinion "some weight," and incorporated limitations in standing, walking, sitting, and stooping in the RFC determination (Tr. 53, 55). The ALJ did not reject Dr. Biddle's opinion on Plaintiff's limitations. The ALJ only rejected Dr. Biddle's ultimate conclusion on an issue reserved to the Commissioner, and properly did so. See 20 C.F.R. §§ 404.1527(d), 416.927(d); (opinions on some issues, such as whether a claimant is disabled, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case"); see Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A.); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.").

As the Sixth Circuit recently held in Francis v. Comm'r of Soc. Sec., 414 Fed App'x 802, 805 (6th Cir. 2011), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times," citing Friend v. Comm'r of Soc. Sec., 375 Fed. App'x 543, 551 (6th Cir. 2010). In Francis, the ALJ had not discussed several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis. Id. at 804-05. Here, the goal of the regulation, to provide a claimant with an understanding of the reasons why his treating physician's opinion did not control, was met when the ALJ incorporated postural limitations Dr. Biddle set forth, but did not defer to his ultimate conclusion.

## II. THE ALJ PROPERLY WEIGHED THE OPINIONS OF THE CONSULTATIVE EXAMINERS.

Plaintiff contends that the ALJ gave insufficient weight to the opinions of James C. Owen, M.D. (Tr. 1162-76) and Glenn Womack, M.D. (Tr. 650-57) both of whom were one-time consultative examiners. Pl.'s Br. at 8. Dr. Owen examined Plaintiff on one occasion in March 2008 and assessed him with "severe difficulty lifting, handling and carrying objects. His hearing, seeing, speaking, and traveling are affected by the weight." (Tr. 1164). He assessed sitting and standing limitations that precluded working an 8-hour day (Tr. 1170).

Dr. Womack completed an RFC assessment on an SSA form in September 2007, but he was not a state agency consultant (Tr. 650-57). The RFC assessment was sent to the agency by Plaintiff's representative (Tr. 650, 657). Dr. Womack merely checked off boxes on the form, and assessed Plaintiff with the ability to perform less than sedentary work (Tr. 650-57).

The opinions of a consultative examiner are evaluated just as any other medical opinion, taking into account the consultant's specialty, the supporting evidence and explanations and any other factors. See 20 C.F.R. §§ 404.1527(e), 416.927(e). The regulations do not require the ALJ to set forth the weight given to the medical opinion of a one-time examiner or give reasons for discounting it. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007); SSR 96-2p, 1996 WL 374188 (S.S.A.). Moreover, an opinion on a claimant's residual functional capacity is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see SSR 96-5p.

Plaintiff urges that the opinions of these two one-time examiners were consistent with other physician reports, and should have been given greater weight. Pl.'s Br. at 8. The ALJ did

8

not assign weight to Dr. Owen's opinion, but did note his observation of "slightly positive straight leg raising" (Tr. 54, 1164).[5] The ALJ gave "little if any weight" to the opinion of Dr. Womack as it was based on a one-time examination without the most recent medical evidence (Tr. 55, 650-57). The ALJ properly applied the regulation by discounting Dr. Womack's opinion due to the length of the treatment relationship and the nature and extent of the treatment relationship. See 20 C.F.R. §§ 404.1527(c)(2)(i),(ii), 416.927(c)(2)(i),(ii).

The ALJ is charged with weighing the evidence and his findings must be affirmed if supported by substantial evidence. Tyra, 896 F.2d at 1028. Here, the ALJ was supported by substantial evidence in his rationale for discounting Dr. Womack's opinion, and the fact that Dr. Womack's opinion may have been similar to another physician's opinion is of no consequence.

Plaintiff also contends that the ALJ gave excessive weight to the opinion of one-time consultative examiner Kooros Sajadi, M.D., an orthopedist. Pl.'s Br. at 8-10. Dr. Sajadi examined Plaintiff in March 2008, when his chief complaint was "pain in the lower back" (Tr. 1177-88). Dr. Sajadi completed an RFC assessment that indicated Plaintiff could sit, stand or walk up to 2 hours at a time without interruption, and could sit 8 hours or stand or walk for 4 hours in an 8-hour workday (Tr. 1183). He assessed no postural or environmental limitations (Tr. 1185-86).

---

[5]The straight leg-raising (SLR) test is designed to detect nerve root pressure, tension, or irritation. With the patient supine or sitting and the knee fully extended, the physician raises the involved leg from the examining table. A positive SLR test requires reproduction of leg pain at an elevation of less than seventy degrees. A positive SLR is the single most important sign of nerve root pressure produced by lumbar disc herniation. Richard H. Rothman M.D., Ph.D., and Frederick A. Simeone, M.D., The Spine, 696-98 (3rd ed. 1992).

In appropriate circumstances, greater weight may be given to medical consultants other than treating sources. See SSR 96-6p, 1996 WL 374180 (S.S.A.). The ALJ granted "more weight" to Dr. Sajadi's opinion as he was a specialist in the orthopedic field, his opinion was supported by observations and clinical testing, and his opinion was not inconsistent with the remaining record (Tr. 55, 1177-88). Dr. Sajadi diagnosed Plaintiff with low back pain due to degenerative arthritis of the lumbosacral spine, DDD and morbid obesity (Tr. 1179). Dr. Sajadi's examination showed Plaintiff had normal gait and was able to walk on tiptoe and on heel (Tr. 1178). Plaintiff's spine showed no spasm or tenderness, and normal pulses and reflexes (Tr. 1178). Dr. Sajadi noted Plaintiff had a negative straight leg raising test, and x-rays showed satisfactory alignment with some arthritic changes and decreased disc spaces (Tr. 1179). Plaintiff's range of motion of all joints and the spine was normal (Tr. 1180-81). These observations and clinical testing supported the ALJ's finding.

The ALJ also stated Dr. Sajadi's opinion was not inconsistent with the remaining record, citing the reports of Drs. Ninad Karandikar and Owen (Tr. 55, 1150-61, 1162-76, 1177-88). Dr. Karandikar listed his specialty as "physical medicine and rehabilitation" (Tr. 1160). Dr. Karandikar examined Plaintiff in January 2008 and observed he had chest pain and shortness of breath (Tr. 1152). He observed Plaintiff walked with a fairly normal gait, and had a regular heart rate and rhythm (Tr. 1152). Plaintiff had tenderness on palpation of the spine, restricted range of motion, and "obvious" impairment in toe and heel walking (Tr. 1153). Dr. Karandikar did not assess work-related limitations (Tr. 1153, 1155-60). Except for Dr. Karandikar's observation of restricted range of motion and impaired toe and heel walk, Dr. Sajadi's opinion was consistent.

Plaintiff argues that Dr. Sajadi considered only his orthopedic condition, and the ALJ should not have given it more weight than the opinions of the examiners who took into account his multiple body systems and diseases. Pl.'s Br. at 9. Yet, one of Plaintiff's severe impairments was lumbar spine DDD, and the opinion of an orthopedic specialist was important in assessing the limitations flowing from this impairment. Certainly, morbid obesity could affect Plaintiff's ability to ambulate and range of motion, which Dr. Sajadi assessed. Morever, the ALJ is charged with reviewing the entire record, evaluating all the medical opinions, and determining a claimant's residual functional capacity. See 20 C.F.R. §§ 404.1546, 416.946.

Dr. Sajadi found Plaintiff to have no postural or environmental limitations, but the ALJ assessed him with both (Tr. 53, 1185-86). The ALJ factored in the observations and opinions of Drs. Karandikar (spinal tenderness, spasm, restricted range of motion) and Owen (difficulty lifting, handling, carrying) when limiting Plaintiff to lifting/carrying 20 pounds occasionally and 10 pounds frequently, and standing/walking a total of 6 hours and sitting 6 hours in an 8-hour day (Tr. 54, 1153, 1164). The ALJ applied the proper legal standards, as he considered the medical opinions of Drs. Karandikar, Owen, Sajadi, Biddle and Womack, evaluated them, and included the limitations he found supported by the record in a determination of Plaintiff's RFC (Tr. 54-55).

Plaintiff asserts that the ALJ did not address the multiple effects of obesity in his opinion. Pl.'s Br. at 9. The ALJ, however, discussed obesity throughout his decision (Tr. 52-54). The ALJ specifically indicated that his RFC assessment reflected conditions (chronic back pain and shortness of breath) that, because they were exacerbated by morbid obesity, resulted in functional limitations (Tr. 54-55). The ALJ fully complied with SSR 02-01p, 2002 WL 628049 (S.S.A.).

11

### III. PLAINTIFF WAS NOT PREJUDICED BY THE ALJ'S DENIAL OF INTERROGATORIES AND A SUBPOENA.

Following the initial hearing in November 2007, the ALJ sent Plaintiff for three consultative examinations by Drs. Karandikar, Owen and Sajadi. The ALJ provided copies of their reports to Plaintiff's representative (Tr. 176-77, 179-82). Plaintiff's representative requested a supplemental hearing and the opportunity to submit interrogatories to Dr. Karandikar (Tr. 178, 183, 184-89). He also requested the opportunity to subpoena Drs. Karandikar and Sajadi to the supplemental hearing (Tr. 190).

The supplemental hearing was held in June 2008 (Tr. 1203-17). The ALJ verbally denied Plaintiff's request for a subpoena and indicated he had no right to cross-examine consultative examiners (as opposed to medical experts) (Tr. 1206). On appeal, in February 2009, the Appeals Council remanded the case to the ALJ because he had not addressed Plaintiff's request for a subpoena or interrogatories in his written decision (Tr. 39-40). The Appeals Council instructed the ALJ to issue a formal written ruling on the request for interrogatories and subpoenas as part of the record (Tr. 40).

The ALJ held a post-remand hearing in April 2010, and again denied Plaintiff's request to cross-examine Dr. Sajadi (Tr. 1194-1202). On June 29, 2010, the ALJ issued a written decision denying Plaintiff's request to submit interrogatories or subpoena Drs. Karandikar and Sajadi for cross-examination (Tr. 24-26).

Plaintiff argues that the denial of his request to send interrogatories and to subpoena the consultative examiners deprived him of an opportunity to cross examine them and amounted to a denial of due process. Pl.'s Br. at 10-13. Plaintiff cites the Hearings, Appeals and Litigation Law

12

Manual(HALLEX) I-2-5-42, 1994 WL 637376 (S.S.A.) (Obtaining Medical Expert Opinion through Interrogatories) as authority for his contention that he should have been permitted to send interrogatories.

Plaintiff, however, does not appreciate the difference between a medical expert (ME) and a consultative examiner. An ME is a physician or other medical professional who provides impartial expert opinion at the hearing level, via in-person testimony or through interrogatory responses, to assist the ALJ in evaluating medical evidence in a case. HALLEX I-2-5-32, 1994 WL 637369 (S.S.A.)(Medical Experts - General). An ME does not examine the claimant. Id. The claimant and his representative have the right to question the ME fully, subject to the ALJ's exercise of control over the hearing. See HALLEX I-2-6-70, 1993 WL 751901 (S.S.A.)(Testimony of a Medical Expert); I-2-6-60, 1993 WL 751900 (S.S.A.) (Testimony of Claimants and Witnesses).

In contrast, a consultative examiner examines the claimant to provide additional evidence about an impairment. See 20 C.F.R. §§ 404.1512(e), 416.912(e); HALLEX I-2-5-20, 1993 WL 643023 (S.S.A.)(Consultative Examinations and Tests). Consultative examiners, like treating physicians, are not generally called to a hearing to testify, rather, their written reports are the evidence considered by the ALJ.

Here, the ALJ overruled Plaintiff's request for cross-examination via interrogatories or subpoena to the hearing and found that the questioning was not necessary to inquire fully into the matters at issue, as the reports "speak for themselves" (Tr. 25). The ALJ cited HALLEX I-2-7-30, 1993 WL 643048 (S.S.A.) (Proffer Procedures), regarding proffers of evidence post-hearing, which states, "If the claimant requests an opportunity to question the author(s) of any post-hearing

report other than the written response of an ME or VE to interrogatories, the ALJ must determine if questioning of the author is required to inquire fully into the matters at issue . . ."

The ALJ reviewed the proposed interrogatories to Dr. Karandikar and determined that several of the proposed questions called for speculation and addressed medical conditions outside the examiner's expertise (Tr. 25, 185-86). The ALJ noted that several of the interrogatories called for speculation (Tr. 25, 185-86).[6] The ALJ also cited HALLEX I-2-5-78, 1992 WL 601841 (S.S.A.) (Use of Subpoenas), which states the standard for evaluation of a subpoena request is whether the subpoena is "reasonably necessary for the full presentation of the case."[6] The ALJ noted the record contained an opinion regarding functional limitations from Plaintiff's treating physician (Tr. 25, 1148-49). The ALJ was supported by substantial evidence and acted well within his discretion when he determined that additional questioning of the consultative examiners was not required to inquire fully into the matters at issue.

Plaintiff acknowledges that he must establish harm to perfect his claim of violation of due process, citing Caudill v. Astrue, No. 09-70-GWU, 2010 WL 148806 (E.D. Ky. Jan. 14, 2010). Pl.'s Br. at 11. Caudill held that a failure to follow a HALLEX provision regarding waiver of the

---

[6] Examples are "What future impairments can he reasonably expect to have?," "Will this condition be likely to cause him pain in the future?," "Will his condition make him more susceptible to recurring or future injury of any type?" (Tr. 185-86).

[6]SSA policy in all circuits other than the Fifth Circuit is that the issuance of a subpoena is only required when it is shown that the testimony sought is "reasonably necessary for the full presentation of a case." See Acquiescence Ruling (AR) 91-1(5), 1991 WL 693295 (S.S.A.), which acquiesces to the Fifth Circuit's holding in Lidy v. Sullivan, 911 F.2d 1075 (5th Cir. 1990), that a request for a subpoena for an examining physician must be granted. AR 91-1 (5) explains that outside the Fifth Circuit, the right to a subpoena is not absolute, it is qualified. The Sixth Circuit held in Flatford v. Chater, 93 F.3d 1296, 1307   (6th Cir. 1996) that due process required the issuance of a subpoena for post-hearing evidence only where reasonably necessary to fully develop the evidence.

right to representation did not require reversal "absent a convincing showing of prejudice." Caudill, 2010 WL 148806, *4. Plaintiff contends he was prejudiced because the ALJ relied heavily on Dr. Sajadi's opinion, even though it did not address his obesity, diabetes, hypertension or abdominal wall compromise. Pl.'s Br. at 12-13. Yet, in his original decision, the ALJ noted Dr. Sajadi was an orthopedic specialist (Tr. 55). In his post-remand decision, the ALJ carefully explained he understood Plaintiff's objection to Dr. Sajadi's report ("does not take into account" all his conditions) (Tr. 25). The ALJ noted Dr. Sajadi's evaluation "was not intended to address [Plaintiff's] pulmonary, cardiac or other non-orthopedic impairments" (Tr. 25). Finally, the ALJ included limitations in excess of what Dr. Sajadi opined in his RFC assessment (Tr. 53, 1177-88). Plaintiff was not prejudiced by the inability to cross-examine Dr. Sajadi.

  Plaintiff also argues he was denied the opportunity to evaluate the rationale behind Dr. Karandikar's opinion that "he could not conduct an evaluation until he had received a cardiac evaluation." Pl.'s Br. at 12. This is most likely a reference to Dr. Karandikar's comment, "I am unable to determine the restrictions at today's visit." (Tr. 1153). Dr. Karandikar recommended pulmonary function testing (PFT) and x-rays for further work up with cardiology and an orthopedic surgeon (Tr. 1153). Subsequently, Plaintiff was examined consultatively by Dr. Owen, who performed a chest x-ray and PFT, and Dr. Sajadi, who reviewed spinal x-rays (Tr. 1164, 1175, 1179). Both of those doctors assessed Plaintiff's functional limitations (Tr. 1162-64, 1177-88). Thus, the ALJ properly denied Plaintiff's requests for a subpoena for Dr. Karandikar as the questioning was not reasonably necessary for the full presentation of the case (Tr. 25).

CONCLUSION

The Commissioner respectfully submits that his decision is supported by substantial evidence, decided by the proper legal standards, and should be affirmed.

        Respectfully submitted,

        KERRY B. HARVEY
        UNITED STATES ATTORNEY

By:   /s/ John S. Osborn, III
        JOHN S. OSBORN, III
        Assistant United States Attorney
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        Phone: (859) 685-4812
        Facsimile: (859) 233-2533
        John.Osborn@doj.gov

**CERTIFICATE OF SERVICE**

I certify that on April 19 , 2012, the foregoing Motion for Summary Judgment w/Memorandum was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant, Brian T. Canupp, Esq., Counsel for the Plaintiff.

        /s/ John S. Osborn, III
        John S. Osborn, III
        Assistant United States Attorney